RECEIVED
AUG 1 4 2017
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| HILCORP ENERGY COMPANY | CIVIL ACTION NO. 6:16CV0598 |
| VERSUS | JUDGE DOHERTY |
| JP OIL COMPANY, LLC | MAGISTRATE JUDGE HANNA |

### MEMORANDUM RULING

Plaintiff Hilcorp Energy Company ("Hilcorp") brings this suit for breach of an indemnity agreement against JP Oil Company, LLC ("JP Oil"). The parties have each filed motions for summary judgment. By their motions, JP Oil seeks dismissal with prejudice of plaintiff's lawsuit [Doc. 11], and Hilcorp seeks an Order "directing JP Oil to reimburse Hilcorp the $100,000 it paid toward the settlements of the underlying legacy lawsuits[1] and all associated fees and expenses." [Doc. 17-1, p. 7] For the following reasons, defendant's motion is DENIED, and plaintiff's motion is GRANTED.

### I. Factual Background

JP Oil and Hilcorp are both oil and gas operators. Effective February 1, 1992, Hilcorp acquired oil and gas leases from Exxon to operate in the South Crowley Oil Field in Acadia Parish. Pursuant to the Exxon-Hilcorp Assignment and Bill of Sale, Hilcorp agreed to broadly indemnify

---

[1] "Legacy lawsuits" or "legacy litigation" refers to "cases filed by landowners seeking damages from oil and gas exploration companies for alleged environmental damage. . . . These types of actions are known as 'legacy litigation' because they often arise from operations conducted many decades ago, leaving an unwanted 'legacy' in the form of actual or alleged contamination." *Marin v. Exxon Mobil Corp.*, 48 So.3d 234, 238, n.1 (La. 2010)(citing Loulan Pitre, Jr., *"Legacy Litigation" and Act 312 of 2006*, 20 Tul. Envt. L.J. 347, 34 (Summer 2007)).

Exxon for "the obligations and liabilities" of Exxon.² [Doc. 17-2, p. 3; Doc. 1-2, p. 1]

On January 17, 1995, Hilcorp sold the same leases to JP Oil for "the sum of Ten and No/100 Dollars ($10.00) and other good and valuable consideration." [Doc. 17-2, p. 11] Although the Assignment and Bill of Sale transferring Hilcorp's interest in the leases to JP Oil was executed in 1995, the agreement has an effective date of February 1, 1992 (i.e., the date upon which Hilcorp acquired the leases from Exxon). [Id. at 12] As with the Exxon-Hilcorp Assignment, under the Hilcorp-JP Oil Assignment, JP Oil agreed to broadly indemnify Hilcorp for "all obligations and liabilities." [Doc. 1-3, p. 1]

In 2006 and 2012, two property owners filed separate lawsuits against Exxon, JP Oil and other defendants (but not Hilcorp) in Acadia Parish state court, alleging that oil and gas operations had contaminated the property that was the subject of the Exxon-Hilcorp and Hilcorp-JP Oil Assignments. [Doc. 1, p. 5; Doc. 17-2, p. 54; Doc. 11, p. 4] Thereafter, Hilcorp received written demands from Exxon requesting Hilcorp defend and indemnify Exxon in the state court suits, as required by the Exxon-Hilcorp Assignment. [Doc. 17-3, pp. 89-90] On September 11, 2014, Hilcorp sent its first of four requests to JP Oil, requesting that JP Oil defend and indemnify Hilcorp in the state court suits pursuant to the Hilcorp-JP Oil Assignment. [Doc. 1, p. 5; Doc. 17-1, p. 3] Hilcorp received no response. [Doc. 1, p. 5]

---

²One of the many obligations Hilcorp assumed on behalf of Exxon was "the obligation to properly plug and abandon any and all wells, and properly abandon facilities, pits, and surface locations associated with the Assigned Property . . ., whether or not such obligation arises prior to the Effective Time hereof." [Doc. 1-2, pp. 1-2] Hilcorp further agreed to "defend, indemnify and hold [Exxon] harmless from any claims, damages, expenses . . . and other costs and liabilities incurred as a result of the ownership or the operation by [Hilcorp], including claims, demands, and causes of actions asserted by third parties . . ., or under any contract or agreement assumed by [Hilcorp] hereunder, for . . . damage to property. . . ." [Id. at 3]

2

In February and May of 2015, Hilcorp notified JP Oil that Exxon was in the process of finalizing settlements in the state court suits for $100,000 each, and that Hilcorp believed these to be favorable settlement amounts and more cost effective than continuing the litigation. [Id. at 6] The letters further advised that unless JP Oil notified Hilcorp by certain dates that it wished to assume the defense or take over the settlement discussions, Hilcorp would move forward with the settlement and "seek reimbursement for the settlement amount and attorney's fees from JP Oil under the indemnity provisions in the 1992 Assignment." [Id.; Doc. 17-2, pp. 95-96] JP Oil declined to indemnify Hilcorp. [Id.] Thereafter, Exxon settled both state court suits for a total of $200,000. [Doc. 1, p. 7]

On September 21 and 29, 2015, Hilcorp paid a total of $100,000 ($50,000 for each suit) to Exxon in consideration for a release of Hilcorp from Exxon's claims for indemnity, contribution and reimbursement against Hilcorp. [Id.] On January 14, 2016, Hilcorp requested that JP Oil reimburse it the $100,000 it paid to Exxon. [Id. at 8] By letter dated February 25, 2016, JP Oil declined to indemnify Hilcorp. [Id.] Thereafter, Hilcorp filed this lawsuit against JP Oil seeking reimbursement of the $100,000 it paid to Exxon and attorney's fees. [Id. at 9]

## II. Summary Judgment Standard

"A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense - on which summary judgment is sought." Fed.R.Civ.P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

*Id.* at § (c)(1).

As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

*Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir.1994)(internal citations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994). To the contrary, "[i]n reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir.2001).

### III. Applicable Law

"Indemnity in its most basic sense means reimbursement, and may lie when one party discharges a liability which another rightfully should have assumed." *Nassif v. Sunrise Homes, Inc.*,

4

739 So.2d 183, 185 (La. 1999). The general rules of contract interpretation apply in construing a contract of indemnity. *Soverign Ins. Co. v. Texas Pip Line Co.*, 488 So.2d 982, 984 (La. 1986); *Berry v. Orleans Parish School Bd.*, 830 So.2d 283, 285 (La. 2002). "Interpretation of a contract is the determination of the common intent of the parties." La. Civ. Code art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." *Id.* at art. 2046. "The words of a contract must be given their generally prevailing meaning." *Id.* at 2047. "Although a contract is worded in general terms, it must be interpreted to cover only those things it appears the parties intended to include." *Id.* at art. 2051. Courts are to construe an indemnity clause to cover all losses which reasonably appear to have been within the parties' contemplation. *Foreman v. Exxon Corp.*, 770 F.2d 490, 496 (5th Cir. 1985)(applying Louisiana law).

## IV. Assignment

The "Assignment and Bill of Sale" between Hilcorp and JP Oil reads in pertinent part as follows:

> THAT, HILCORP ENERGY JOINT VENTURE[3] . . . (hereinafter referred to as "Assignor") for and in consideration of the sum of Ten and No/100 Dollars ($10.00) and other good and valuable consideration paid by J.P. Oil Company, Inc.[4] . . . (hereinafter referred to as "Assignee"), . . . does hereby GRANT, BARGAIN, SELL, CONVEY and ASSIGN unto Assignee, mineral leases and /or lands more particularly described in Exhibit "A" . . . , together with all wells, personal property, fixtures, equipment and improvements located thereon, appurtenant thereto or used or obtained in connection therewith (hereinafter referred to as "Subject Property").

---

[3] According to the Complaint, Hilcorp Energy Joint Venture is the predecessor in interest to Hilcorp Energy Company. [Doc. 1, p. 2]

[4] According to the Complaint, J.P. Oil Company, Inc. is the predecessor in interest to JP Oil Company, LLC. [Doc. 1, p.3]

This Assignment is made without warranty of title, . . . and Assignee further accepts the Subject Property AS IS, WHERE IS, IN ITS PRESENT CONDITION AND STATE OF REPAIR, AND WITHOUT ANY REPRESENTATIONS, GUARANTIES OR WARRANTIES, EXPRESS OR IMPLIED, . . .THAT SAID PROPERTY HAS BEEN RENDERED FREE OF ANY DEFECTS, HAZARDS OR DANGEROUS CONDITIONS INCLUDING, WITHOUT LIMITATION, THE PRESENCE OF NATURALLY OCCURRING RADIOACTIVE MATERIAL (NORM) OR ENVIRONMENTAL CONTAMINATION.

Assignee expressly agrees to assume all obligations and responsibilities with respect to the plugging, replugging and abandonment obligations of Assignor relative to any unplugged wells relating to the Subject Property. **Assignee further expressly agrees to assume all surface restoration obligations relative to the Subject Property. Assignee does further indemnify and hold Assignor harmless from and against any expense, claim or cause of action, including court costs and attorneys' fees, brought against Assignor or Assignee by any third party arising from Assignee's failure to comply with the plugging, replugging, abandonment or surface restoration obligations set forth herein and relating to the Subject Property.**

. . . **Assignee does further assume all obligations and liabilities, if any, and does agree to indemnify and hold Assignor harmless . . . from and against each and every claim, demand or cause of action**, including court costs and attorneys' fees, **with respect to any damage or loss which may be made or asserted by Assignee**, its agents or successors, **or by any third party or parties . . . on account of . . . property damage caused by, arising out of or incident to the past, present or future condition or state of repair of the Subject Property**, or the ownership or use thereof, **or this Assignment** and Bill of Sale. . . .

Without limiting the generality of the foregoing, but in furtherance of same, **Assignee expressly agrees to fully and promptly pay, perform and discharge, defend, indemnify and hold Assignor harmless . . . from and against any claim, demand[,] cause of action, loss, cost, damage, fine, penalty or expense**, including court costs and attorneys' fees, **resulting from any Environmental Claim arising out of any operations conducted, commitment made or any action taken or omitted, by Assignor at any time, whether past, present or future, with respect to the Subject Property. . . .**

This Assignment is made subject to the terms and provisions of all operating agreements, gas purchase contracts, oil and gas leases, rights-of-way and easements, and any other agreement, whether recorded or unrecorded, in any way affecting the Subject Property.

6

> This Assignment and Bill of Sale shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and assigns. The terms, covenants and conditions contained herein shall constitute covenants running with the Subject Property and shall be binding upon and inure to the benefit of the respective successors and assigns of Assignor and Assignee.

[Doc. 12-1, pp. 21-22(bold emphasis added)]

## V.     Arguments and Analysis

Hilcorp contends the plain language of the Hilcorp-JP Assignment and Bill of Sale requires JP Oil to reimburse Hilcorp for the $100,000 it contributed to the settlement of the legacy suits, as well as "attorneys' fees it has incurred as a result of environmental property damage claims for which JP Oil had assumed exclusive responsibility." [Doc. 17-1, p. 4] Hilcorp argues the contractual language shows "JP Oil assumed complete responsibility for the condition of the property," JP Oil "took on the exclusive obligation to restore the surface of the property," and JP Oil "agreed to defend, indemnify and hold Hilcorp harmless from *any* claims, demands, costs or expenses related to the past, present or future condition of the property." [Id. at 5(emphasis in original)] According to Hilcorp, "The property owners' lawsuits for environmental damage directly led to Exxon's demand on Hilcorp in which Exxon passed on its liabilities for the property's condition to Hilcorp." [Id.] This, in turn, led to Hilcorp's demand upon JP Oil, because pursuant to the Hilcorp-JP Oil Assignment and Bill of Sale, "JP Oil is obligated to defend, indemnify, and hold Hilcorp harmless from any claim, demand, loss, cost, or expense related to environmental damage to the property." [Id.]

JP Oil argues Hilcorp seeks indemnity "based upon the payment it made to Exxon arising out of the contractual provisions found in the 1992 Assignment, not for tort claims arising out of the

property." [Doc. 11, p. 20] JP Oil argues when a party seeks to shift his contractual liability to indemnify a third party, Louisiana "jurisprudence consistently holds such a claim is viable only when the applicable contractual language is clear and express and the alleged indemnitor has notice of the obligation and gives his express consent thereto." [Id. at 9-10 (quoting *Marshall v. Southwest Louisiana Elec. Membership Coop*, 915 So.2d 1026, 1029 (5th Cir. 2005)] JP Oil then discusses the decisions in *Marshall* and *Foreman* (which are factually distinguishable from the matter before this Court), and creates the following "analytical framework," contending:

If negative answer is given to any of these questions, no indemnity is owed:

1. Does the agreement contain an obligation to indemnify?

2. Does the agreement have a specific provision setting forth one party's (Hilcorp's) contractual indemnification obligation owed to another entity that is not a party to the agreement?

3. Does the agreement give notice to a party (JP Oil) that it is assuming the other party's (Hilcorp's) contractual liabilities (indemnity obligations) to another entity that is not a party to the agreement?

4. Does the agreement contain an expression of intent on the part of one party (JP Oil) to assume the other party's (Hilcorp's) contractual liabilities (indemnity obligations) to another entity that is not a party to the agreement?

[Id. at 14-15]

JP Oil then concludes no indemnity is owed because Hilcorp has failed to establish elements two through four above. [Id. at 15] According to JP Oil, "While the 1995 Assignment does provide for indemnity: it does not include any specific provision pertaining to Hilcorp's contractual indemnification obligation to Exxon or any other entity; it does not contain any notice to JP Oil that by signing the contract JP Oil was assuming Hilcorp's contractual indemnity obligations owed to

8

Exxon; and it does not contain any expression of intent on the part of JP Oil to assume Hilcorp's contractual liabilities to Exxon." [Id.]

First, the Court notes its disagreement with JP Oil's characterization of the applicable law. JP Oil has created its own "test" for analysis of indemnity agreements, which is not supported by the jurisprudence cited. JP Oil imposes far stricter requirements than required by the caselaw. JP Oil essentially argues because the Assignment in this matter does not specifically state "JP Oil agrees to indemnify Hilcorp for its contractual obligations to Exxon," no indemnity may be had. Such a level of specificity is not required under the law. JP Oil is correct that "express notice is required where a party seeks to shift his contractual liability to indemnify a third party." *Foreman* at 496 (quoting *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 351 (5th Cir. 1981)); *see also Marshall* at 1029. However, "Louisiana law does not go so far as to require explicit reference to the individual, assumed obligation." *Davis Oil Co. V. TS, Inc.*, 145 F.3d 305, 311 (5th Cir. 1998). A contract "need not contain any special words to evince an intention to create a right of indemnity for independent contractual liabilities." *Sumrall v. Ensco Offshore Co.*, 291 F.3d 316, 320 (5th Cir.2002). Rather, it merely "must clearly express such a purpose." *Id.*

Second, the Court notes its disagreement with JP Oil's method of contractual interpretation. In its brief, JP separately examines each paragraph of the contract, as if each stands alone. But this is incorrect under Louisiana law. Rather, pursuant to Louisiana law, "Each provision in a contract must be interpreted in light of the other provision so that each is given the meaning suggested by the contract as a whole." La. Civ. Code art. 2050.

After close review of the Assignment, the Court finds the broad language of the indemnification provisions demonstrates JP Oil's intent to indemnify Hilcorp for the expenses

9

incurred in the underlying legacy lawsuits. The Assignment reflects the parties' agreement that JP Oil would be fully responsible for: (1) "all surface restoration obligations relative to the Subject Property"; (2) "any expense, claim, or cause of action . . . brought against Assignor [ Hilcorp] . . . by any third party [e.g., Exxon] arising from Assignee's [JP Oil] failure to comply with the . . . surface restoration obligations set forth herein and relating to the Subject Property"; (3) "every claim, demand or cause of action . . . with respect to any damage or loss which may be made . . . by any third party [Exxon] or parties . . . on account of . . . property damage caused by, arising out of or incident to the past, present or future condition or state of repair of the Subject Property"; and (4) "any claim, demand[,] cause of action, loss, cost, damage, fine, penalty or expense . . . resulting from any Environmental Claim arising out of any operations conducted, commitment made or any action taken or omitted, by [Hilcorp] at any time, whether past, present or future, with respect to the Subject Property. . . ." [Doc. 12-1, pp. 21-22] Further, the "Assignment is made subject to the terms and provisions of . . . any other agreement [e.g., the Exxon-Hilcorp Assignment], whether recorded or unrecorded, in any way affecting the Subject Property." [Id. at 22] Thus, JP Oil agreed to indemnify Hilcorp from expenses, claims, etc. brought by third parties and arising from surface restoration obligations, property damage, and environmental claims (whether caused by past, present or future condition of the property). The Court finds the expenses and attorneys' fees Hilcorp incurred due to the underlying legacy litigation falls under the obligations JP Oil assumed on behalf of Hilcorp, pursuant to the very broad language memorializing the parties' indemnity agreement.

The Court finds the case of *Joslyn Mfg. Co. v. Koppers Co., Inc.*, 40 F.3d 750 (5th Cir. 1994) to be instructive. In *Joslyn*, the Assignee of real property leases (Joslyn) brought an action for contribution against the lessor and the former owner of the property, seeking recovery for

remediation of the property ordered by the Louisiana Department of Environmental Quality (DEQ). The issue before the Court was whether the indemnity obligations between the parties required Joslyn, as Assignee, to indemnify the owner/lessor of the property for environmental damages caused by the Assignor prior to the Assignment to Joslyn. The Assignment Agreement stated in pertinent part, "[T]he undersigned [Joslyn] agrees to carry out and perform, as well as to be bound by all the terms and provisions of . . . said Lease Agreements of June 11, 1942 and November 11, 1949, all of which are incorporated herein by reference with the same like effect as if copied herein in full." *Id.* at 755, 758 (emphasis omitted).

> The 1942 lease assigned to Joslyn contained the following indemnification provision:
>
> Lessee forever shall defend, indemnify as an insurer, and save harmless [lessor] from, for and against any and all liability, judgments, outlays and expenses . . . consequent on any injury, death, damage, loss or destruction . . . suffered or caused by or to any person or property incident to or while being engaged or being used in the doing of whatsoever Lessee attempts hereunder, or while on Premises for any reason whatsoever. . . .

*Id.* at 754.

As noted by the Fifth Circuit, "[t]he 1949 lease contained a similarly broad indemnification provision," which provided in pertinent part:

> The Lessee agrees to indemnify the [Lessor] and save it harmless from any and all claims and expenses that may arise or that may be made for death, injury, loss or damage, resulting to the [Lessor's] . . . property . . . , arising from or happening in connection with or during the occupancy or use of said premises by the Lessee, whether or not caused by the negligence of the [Lessor], and resulting from fire or any other cause. . . .

*Id.*

The Fifth Circuit found:

> The broad language of the indemnification agreements . . . evince [sic] a strong intent by the lessee to indemnify the lessor for all liability arising in connection with the occupancy or use of the land. We hold that the indemnification agreements were intended to cover all forms of liability, including liability under . . . LEQA [i.e., the Louisiana Environmental Quality Act], even though environmental liability under these statutes was not specifically contemplated at the time of contracting.[5]

*Id.* at 754-55.

After its examination of the above indemnity agreements and the assignment, the Fifth Circuit stated, "We hold as a matter of law the language of the assumption agreement displays the intent of Joslyn to assume all of the obligations of [the Assignee] under the lease," finding the language of the contract to be "clear and unambiguous." *Id.* at 758 & n. 11. The Court reasoned:

> This language [of the Assignment] clearly expresses Joslyn's intent to take over all obligations under the referenced contracts. There is no language of limitation contained in the assumption agreement, and no attempt was made to limit the assumption to prospective obligations. We find as a matter of law that Joslyn accepted a general assignment of the leases and thereby agreed to perform all of [the Assignor's] obligations thereunder.

*Id.* at 758. Similarly (but with even stronger language), the language of the Assignment in this matter expresses JP Oil's intent to take over all of Hilcorp's obligations relating to the subject property.

In this matter, the underlying lawsuits allege that oil and gas operations contaminated both the surface and subsurface of the subject property and assert claims in tort and contract. [*See e.g.* Doc. 17-2, pp. 21, 25, 26, 30, 32, 52, 55-56, 58, 60, 71] For all of the reasons discussed above, the Court finds the allegations of the underlying lawsuit, coupled with Hilcorp's obligation to indemnify

---

[5]As noted, the leases were executed in 1942 and 1949. The first version of the LEQA (the "Louisiana Environmental Affairs Act") was not enacted until 1979. *See e.g.* Kenneth M. Murchison, *Enforcing Environmental Standards Under State Law: The Louisiana Environmental Quality Act*, 57 La. L. Rev. 497, 498-99, n.10 (1997).

Exxon, triggered JP Oil's obligation to indemnify Hilcorp, pursuant to the broad language of the indemnity agreement between Hilcorp and JP Oil.

## VI. Conclusion

For the reasons set forth above, the motion for summary judgment filed by Hilcorp is GRANTED [Doc. 17], and JP Oil is ORDERED to reimburse Hilcorp the $100,000 it contributed to the settlement of the underlying legacy lawsuits and all associated fees and expenses. The motion for summary judgment filed by JP Oil [Doc. 11] is DENIED.

THUS DONE AND SIGNED in Lafayette, Louisiana, this 14 day of August, 2017.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE